In re Petition for Naturalization of
Donna Rose **HOLLINGER**.
No. 274157.

United States District Court
E. D. Michigan, S. D.
Sept. 7, 1962.

Merle J. Tower, Designated Naturalization Examiner, for the United States.

Wilber M. Brucker, Detroit, Mich., for petitioner.

McCREE, District Judge.

Petitioner is a native and national of Austria and the wife of a United States citizen. She was lawfully admitted into the United States for permanent residence on November 25, 1955, and filed her petition for naturalization on September 20, 1960, under the three-year residence provisions of 8 U.S.C. § 1430.[1]

The facts in this case are not in dispute. Petitioner was born in Roumania in 1911. She first entered this country illegally in 1937. On July 6, 1947, after a brief visit to Canada, petitioner re-entered the United States without the requisite entry documents. From July 16 to December 19, 1947, she was treated at the Ypsilanti State Hospital for a mental disorder diagnosed as "schizophrenia, catatonic type". She married George Hollinger, a United States citizen, on October 22, 1948, and was declared sane by the Wayne County Probate Court on November 18, 1948. Subsequently, a deportation proceeding was instituted on the basis of petitioner's 1947 entry without documents and on grounds of insanity at the time of entry and previous attack of insanity. In connection with this proceeding, the United States Public Health Service certified that petitioner was afflicted with schizophrenia, catatonic type, at the time of her arrival on July 6, 1947. Petitioner applied for suspension of deportation or, in the alternative, for voluntary departure. By order of the Board of Immigration Appeals she was found to be deportable, and suspension of deportation was denied. However, the Board granted voluntary departure and authorized readmission under the 7th Proviso to Section 3, of the Immigration Act of 1917[2] "if otherwise admissible than as one who has had a previous attack of insanity, conditioned on the posting of a bond in the amount of $1000, pursuant to Section 21 * of the Immigration Act."

On January 25, 1952, petitioner's appeal from the portion of the order denying suspension of deportation was dismissed, and on June 24, 1952, her application for rehearing was denied. On October 7, 1954, the Board of Immigration Appeals entered an order granting petitioner's application for pre-examination in connection with the prior order authorizing voluntary departure and 7th Proviso relief. A further order was entered on April 11, 1955, eliminating the requirement of a $1000 bond, Mr. Hollinger having satisfied the Board of his financial responsibility.

Petitioner was granted a regular border crossing card on November 5, 1955, and on November 25th was admitted at

---

1. "(a) Any person whose spouse is a citizen of the United States may be naturalized upon compliance with all the requirements of this subchapter except the provisions of paragraph (1) of section 1427(a) of this title if such person immediately preceding the date of filing his petition for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least three years, and during the three years immediately preceding the date of filing his petition has been living in marital union with the citizen spouse, who has been a United States citizen during all of such period, and has been physically present in the United States for periods totaling at least half of that time and has resided within the State in which he filed his petition for at least six months."

2. "[Provided] That aliens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years may be admitted in the discretion of the Attorney General, and under such conditions as he may prescribe." 39 Stat. 878.

* See 8 U.S.C. § 1183.

the port of Detroit for permanent residence in the United States.

Subsequently, in December, 1958, and January, 1959, petitioner underwent treatment at a private hospital in Ann Arbor, Michigan, for a condition diagnosed as "schizophrenic reaction, paranoid type". Her hospitalization on this occasion was not pursuant to court commitment but was entirely voluntary. In September, 1960, petitioner made a short visit (lasting not more than a week) to Canada, and returned through the Windsor-Detroit crossing.

It is the recommendation of the designated naturalization examiner that the instant petition be denied. He suggests that petitioner is barred from the acquisition of citizenship on either of two grounds: (1) that the order of the Board of Immigration Appeals waived petitioner's prior insanity only for the purpose of her first entry following voluntary departure, and not for the purpose of *subsequent* entries; (2) that the aforesaid order waived only the 1947–1948 attack of insanity and not the 1958–1959 "attack". The examiner contends that upon petitioner's last entry into the United States in September, 1960, she lost her status as an alien lawfully admitted for permanent residence and hence does not satisfy the residence requirements of 8 U.S.C. § 1430.

It should be noted that there is no question but that petitioner always has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States. Moreover, petitioner's present mental competence is unchallenged.

Counsel for petitioner answers the examiner's objections by saying that the several Board orders, properly construed, effected a waiver of the petitioner's impediment for the purpose of all future entries, not merely for the initial entry after voluntary departure. Secondly, counsel argues that the orders are sufficiently broad to cover future attacks of insanity, since it is apparent that the substantial possibility of a recurrence of petitioner's mental disorder was known to and considered by the Board.

The court is in agreement with petitioner's view of the matter. Admittedly, at the time of Mrs. Hollinger's entry into the United States in 1947, she was excludable as an alien who had had a previous attack of insanity and who was insane at the time of entry. The court cannot and is not asked to disturb these findings. However, by granting 7th Proviso relief, the Board of Immigration Appeals expressly waived this disability. The original order of the Board provided in part as follows:

"Application for suspension of deportation or in the alternative voluntary departure has been made. The respondent is not eligible for suspension of deportation because she is deportable on a charge which brings her case within the purview of Section 19(d) of the Immigration Act of 1917, as amended. However, in view of her long residence in this country of some 14 years, the hardship which would befall her United States citizen husband, and her good behavior while residing in this country, we believe that she may be granted voluntary departure and that in conjunction therewith, her readmission authorized under the 7th Proviso to Section 3 of the Immigration Act of 1917. In order to assure that she will not become a public charge in the event of recurrence of her mental illness, the exercise of the discretion under the 7th Proviso will be conditioned upon the posting of a public charge bond pursuant to Section 21 of the Immigration Act of 1917."

It will be seen that the only condition imposed by the Board upon its waiver of excludability was that the petitioner post a public charge bond (a condition later stricken by the Board). The examiner now urges as a bar to citizenship the same basis for excludability which was specifically waived by the Board. He reasons that petitioner's status as an

alien lawfully admitted for permanent residence was changed by virtue of her brief sojourn to Canada in 1960. If this. were indeed the fact, it would seem to follow that petitioner is now deportable.[3] The Board, however, would not so hold. Its position, as stated in Matter of G—— A——, 7 I & N Dec. 274 (1956), is that a ground of inadmissibility which has been waived cannot form the basis for a subsequent deportation proceeding unless and until the waiver is revoked by the Attorney General.[4]

Accordingly, the court cannot sustain the contention that petitioner's 1947 insanity, waived as a basis for excludability by the Board of Immigration Appeals, now renders petitioner ineligible for naturalization.

As a second and distinct ground for ineligibility, the examiner relies on the fact that for several weeks in the winter of 1958–1959, petitioner voluntarily sought treatment at a private hospital for a condition diagnosed as "schizophrenic reaction, paranoid type". This, he urges, constituted an attack of insanity within the meaning of the statute and as such rendered petitioner excludable from the United States upon her re-entry following a brief visit to Canada in 1960.

The only evidence from which the court is asked to conclude that petitioner was insane for a period of time in 1958–1959, is a letter to the United States Immigration Service, dated March 29, 1961, from Dr. Stuart M. Gould, Jr., of Mercywood Hospital, Ann Arbor, in which he states:

"Mrs. Hollinger requested that I give you the following information from my records. She was treated by me at Mercywood Hospital from 12/13/58 to 12/31/58, and again from 1/14/59 to 1/31/59. She was treated for a condition which was diagnosed as schizophrenic reaction, paranoid type."

■ The only evidence upon which a finding of insanity can be made for the purpose of an exclusion proceeding is a certification under 8 U.S.C. § 1224 by a medical officer of the United States Public Health Service, or specially designated civil surgeons, or a board of Public Health Service officers. When excludability by reason of mental illness is asserted as a basis for refusing citizenship to an otherwise qualified applicant, the court should not accept less than the law requires in an exclusion proceeding.

■ Furthermore, even if it be conceded that petitioner suffered an attack of insanity prior to her re-entry into this country in 1960, it is apparent that the several orders of the Board granting 7th Proviso relief are sufficiently broad as to include a recurrence of petitioner's mental illness.

In its original order the Board noted that "[a]t the time of her release from [Ypsilanti State] hospital, her outlook for the future was considered to be decidedly guarded". The purpose of requiring that a bond be posted was "[i]n order to assure that she will not become a public charge in the event of recurrence of her mental illness". Thus, a fair interpretation of the order would be that a recurrence of Mrs. Hollinger's mental disorder was regarded as a distinct possibility and was within the waiver of excludability.

---

3. There are no deportation proceedings now pending against petitioner, and, no suggestion has been made that any are contemplated.

4. "We believe that if 8 U.S.C. 1182(c) [the successor to the 7th Proviso] is exercised to waive a ground of inadmissibility based upon a criminal conviction, a deportation proceeding cannot thereafter be properly instituted based upon the same criminal conviction unless, of course, the Attorney General has revoked the previous grant of relief." Id. at p. 275. To this extent, I conceive that Matter of F——, 5 I & N Dec. 146 (1953), upon which the examiner principally relies, has been modified by the agency. The alternative holding in Matter of F——, viz., that violation of an express condition of the waiver renders the alien deportable, is, of course, entirely consistent with Matter of G—— A——.

The court finding that the petitioner, Donna Rose Hollinger, has satisfied all prerequisites for naturalization, her petition is hereby granted.