## BROWNELL, ATTORNEY GENERAL, *v.*
## TOM WE SHUNG.

No. 43.   Argued November 13, 1956.—Decided December 17, 1956.

*Oscar H. Davis* argued the cause for petitioner.   On the brief were *Solicitor General Rankin, Assistant Attorney General Olney, Beatrice Rosenberg* and *Isabelle R. Cappello.*

*Andrew Reiner* argued the cause for respondent.   With him on the brief was *Jack Wasserman.   David Carliner* entered an appearance for respondent.

Mr. Justice Clark delivered the opinion of the Court.

In *Shaughnessy* v. *Pedreiro,* 349 U. S. 48 (1955), we held that an alien, ordered deported by the Attorney General under the provisions of the Immigration and Nationality Act of 1952, might test the legality of such order in a declaratory judgment action brought under § 10 of the Administrative Procedure Act, 60 Stat. 243, 5 U. S. C. § 1009. The sole question to be determined here is whether the legality of an exclusion order entered under the relevant provisions of the same 1952 Act must be challenged by habeas corpus, or whether it may also be reviewed by an action for declaratory judgment under § 10 of the Administrative Procedure Act. The Court of Appeals held the latter to be an appropriate remedy. 97 U. S. App. D. C. 25, 227 F. 2d 40. We granted certiorari, 351 U. S. 905, because of the importance of the question in the administration of the immigration law. We conclude that either remedy is available in seeking review of such orders. This makes it unnecessary for us to pass upon other questions raised by the parties.

Shung, a Chinese alien, presented himself at San Francisco on November 28, 1947, claiming admission to the United States under the provisions of the War Brides Act of December 28, 1945, 59 Stat. 659, 8 U. S. C. (1946 ed.) § 232. He testified under oath that he was the blood son of an American citizen who served in the United States armed forces during World War II. In January 1948 and again in February 1949, Boards of Special Inquiry held Shung inadmissible on the ground that he had not established the alleged relationship. The Board of Immigration Appeals affirmed. Shung first sought judicial review of this order by a declaratory judgment action instituted before the effective date of the Immigration and Nationality Act of 1952. His complaint was dismissed on the ground that the order was valid. *Tom We Shung* v.

*McGrath,* 103 F. Supp. 507, aff'd *sub nom. Tom We Shung* v. *Brownell,* 93 U. S. App. D. C. 32, 207 F. 2d 132. We vacated the judgment and remanded the cause to the District Court with directions to dismiss it for lack of jurisdiction, 346 U. S. 906, on the authority of *Heikkila* v. *Barber,* 345 U. S. 229 (1953), which held that habeas corpus was the only available remedy for testing deportation orders under the Immigration Act of 1917. After the passage of the 1952 Act, Shung filed this suit seeking review of his exclusion by a declaratory judgment action. He asserts that our ruling in *Pedreiro* permitting deportation orders under the 1952 Act to be challenged by declaratory action requires a similar result as to exclusion orders. However, the Government contends that the *Pedreiro* rule does not apply in exclusion cases because of the basic differences between those actions and deportation cases. The Government also urges that the language, statutory structure, and legislative history of the 1952 Act support its contention.

## I.

At the outset the Government contends that constitutionally an alien seeking initial admission into the United States is in a different position from that of a resident alien against whom deportation proceedings are instituted.[1] This, it contends, precludes general judicial re-

---

[1] Since *Ekiu* v. *United States,* 142 U. S. 651 (1892), this Court has held that in exclusion cases involving initial entry "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." At p. 660. Nevertheless, due process has been held in cases similar in facts to the one here involved to include a fair hearing as well as conformity to statutory grounds. On the other hand, "It is well established that if an alien is a lawful permanent resident of the United States and remains physically present there, he is a person within the protection of the Fifth Amendment." *Kwong Hai Chew* v. *Colding,* 344 U. S. 590, 596 (1953).

view. Shung admits these substantive differences but counters that such a distinction should be without significance when all that is involved is the form of judicial action available, not the scope of review. We do not believe that the constitutional status of the parties requires that the form of judicial action be strait-jacketed. Nor should the fact that in one action the burden is on the alien while in the other it must be met by the Government afford basis for discrimination. Admittedly, excluded aliens may test the order of their exclusion by habeas corpus. Citizenship claimants who hold "certificates of identity" are required by § 360 (c) of the 1952 Act [2] to test the validity of their exclusion by habeas corpus only. Respondent here neither claims citizenship nor did he hold a certificate of identity, and § 360 (c) has no bearing on this case. For a habeas corpus proceeding the alien must be detained or at the least be in technical custody, as the Government puts it. On the other hand, a declaratory judgment action requires no such basis and the odium of arrest and detention is not present. It does not follow that the absence of this condition would enlarge the permissible scope of review traditionally permitted in exclusion cases. The substantive law governing such actions would remain the rule of decision on the merits but the form of action would be by declaratory

---

[2] Section 360 (c), 66 Stat. 273, 8 U. S. C. § 1503, provides in part:

"A person who has been issued a certificate of identity under the provisions of subsection (b), and while in possession thereof, may apply for admission to the United States at any port of entry, and shall be subject to all the provisions of this Act relating to the conduct of proceedings involving aliens seeking admission to the United States. A final determination by the Attorney General that any such person is not entitled to admission to the United States shall be subject to review by any court of competent jurisdiction in habeas corpus proceedings and not otherwise."

judgment rather than habeas corpus.[3]   We conclude that unless the 1952 Act is to the contrary, exclusion orders may be challenged either by habeas corpus or by declaratory judgment action.

## II.

The Government insists that Congress has limited such challenges to habeas corpus actions by certain language in the 1952 Act.   It argues that the finality clause of the Act with respect to exclusion[4] limits judicial review to habeas corpus only.   The gist of that clause as to deportation cases is that "the decision of the Attorney General shall be final,"[5] while in exclusion proceedings "the decision of a special inquiry officer [is] final unless reversed on appeal to the Attorney General."   The Government reasons that the latter clause limits review to administrative appeal to the Attorney General and that no other form of review was intended, aside from habeas corpus, to test the alien's exclusion.   It points to exceptions that even withhold administrative review in certain classes of cases as bolstering its position.   It is true that subsections (b) and (d) of § 236 of the 1952 Act deny any administra-

---

[3] We do not suggest, of course, that an alien who has never presented himself at the borders of this country may avail himself of the declaratory judgment action by bringing the action from abroad.

[4] Section 236 (c), 66 Stat. 200, 8 U. S. C. § 1226 (c):

"(c) Except as provided in subsections (b) or (d), in every case where an alien is excluded from admission into the United States, under this Act or any other law or treaty now existing or hereafter made, the decision of a special inquiry officer shall be final unless reversed on appeal to the Attorney General."

[5] Section 242 (b), 66 Stat. 210, 8 U. S. C. § 1252 (b) provides in part:

"In any case in which an alien is ordered deported from the United States under the provisions of this Act, or of any other law or treaty, the decision of the Attorney General shall be final. . . ."

tive appeal on temporary exclusion in security cases as well as in those where the alien suffers a medical affliction of certain types. But to darken the meaning of the word "final" as used by Congress by giving it chameleonic characteristics is to indulge in choplogic. In fact, the regulations of the Attorney General seem to give "final" the same connotation with respect to deportation as does the Act with respect to exclusion. See 8 CFR, Rev. 1952, § 242.61 (e). Furthermore, as we pointed out in *Pedreiro,* such a "cutting off" of judicial review "would run counter to § 10 and § 12 of the Administrative Procedure Act." 349 U. S., at 51. "Exemptions from the . . . Administrative Procedure Act are not lightly to be presumed," *Marcello* v. *Bonds,* 349 U. S. 302, 310 (1955), and unless made by clear language or supersedure the expanded mode of review granted by that Act cannot be modified. We therefore conclude that the finality provision of the 1952 Act in regard to exclusion refers only to administrative finality.

### III.

The Government also points to certain testimony at hearings on the bill, as well as statements made on the floor in debate at the time of passage of the 1952 Act, as supporting its position. We believe, however, that Senate Report No. 1137, 82d Cong., 2d Sess.,[6] and the statement of the managers on the part of the House which accom-

---

[6] "*Exclusion procedures* In both S. 3455 and S. 716, the predeces-. sor bills, it was provided that administrative determinations of fact and the exercise of administrative discretion should not be subject to judicial review and that the determinations of law should be subject to judicial review only through the writ of habeas corpus. This language is omitted from the instant bill. The omission of the language is not intended to grant any review of determinations made by consular officers, nor to expand judicial review in immigration cases beyond that under existing law." At p. 28.

panied the Conference Report,[7] reflect the intention of the Congress in this regard. The Senate Report, after reciting that a provision limiting "judicial review only through the writ of habeas corpus" had been stricken from the bill, stated that such action was not intended to *"expand* [the scope of] judicial review in immigration cases beyond that under existing law." (Emphasis supplied.) The House managers reported that after careful consideration of "the problem of judicial review" they were satisfied that the "procedures provided in the bill . . . remain within the framework and the pattern of the Administrative Procedure Act. The safeguard of judicial procedure is afforded the alien in both exclusion and deportation proceedings." We believe that our interpretation of the Act is in full accord with these significant reports made by those sponsoring and managing the legislation on the floor of each house of the Congress.

It may be that habeas corpus is a far more expeditious remedy than that of declaratory judgment, as the experience of Shung may indicate.[8] But that fact may be weighed by the alien against the necessity of arrest and detention after which he may make his choice of the form of action he wishes to use in challenging his exclusion. In either case, the scope of the review is that of existing law.

*Affirmed.*

---

[7] "(2) Having extensively considered *the problem of judicial review,* the conferees are satisfied that procedures provided in the bill, adapted to the necessities of national security and the protection of economic and social welfare of the citizens of this country, *remain within the framework and the pattern of the Administrative Procedure Act. The safeguard of judicial procedure is afforded the alien in both exclusion and deportation proceedings."* (Emphasis supplied.) H. R. Rep. No. 2096, 82d Cong., 2d Sess., at 127.

[8] The original complaint in the former action was filed January 19, 1950.