William **MONTGOMERY** and Lillian Montgomery, Appellants,

v.

**Richard H. FFRENCH**, District Director of the Immigration and Naturalization Service of the Department of Justice of the United States of America, Appellee.

No. 16864.

United States Court of Appeals
Eighth Circuit.

Feb. 9, 1962.

Forrest Boecker, St. Louis, Mo., and William B. Ewald, St. Louis, Mo., on the brief, for appellants.

Charles Gordon, Regional Counsel, Immigration and Naturalization Service, St. Paul, Minn., and D. Jeff Lance, U. S. Atty., and Lee J. Placio, Jr., Asst. U. S. Atty., St. Louis, Mo., on the brief, for appellee.

Before VOGEL and RIDGE, Circuit Judges, and GRAVEN, Senior District Judge.

VOGEL, Circuit Judge.

By a declaratory judgment action (28 U.S.C.A. § 2201), appellants sought judicial review of an administrative determination denying their petition to classify an alien child named Kim Yang Soon, who is a Korean national, as an "eligible orphan" within the provisions of former 8 U.S.C.A. § 1205.[1]

Appellants, husband and wife, are citizens and residents of the State of Missouri. On November 9, 1959, they entered into an adoption by proxy proceeding for the adoption of Kim Yang Soon, a Korean child who was at that time, and still is, living in the Republic of Korea. Thereafter, and in accordance with the provisions of 8 U.S.C.A. § 1205, appellants filed their petition seeking approval to bring to the United States their adopted Korean orphan child on a non-quota basis. The Immigration and Naturalization Service of the Department of Justice conducted an investigation as provided in § 1205.[2] Thereafter the petition was denied by the District Director:

"\* \* \* The petition is denied for the reason that you have failed to establish that you will care for the eligible orphan properly if she is admitted to the United States as required by Sec. 4 of the Act of September 11, 1957, \* \* \*."

Such ruling was appealed to the Regional Commissioner and thereafter review was obtained by the Commissioner of Immigration and Naturalization. In each instance the order denying the petition was affirmed. Thereupon appellants commenced this action in the District Court, naming as defendant the District Director of Immigration and Naturalization Service. Answer was interposed deny-

---

1. The original statute providing for the immigration of orphans adopted by American citizens was Sec. 4 of the Act of September 11, 1957, 71 Stat. 639–640. Under that statute an orphan adopted by an American citizen automatically became entitled to a visa allowing him to enter the United States. The 1957 Act expired in 1959. Thereafter in a revision of the law Congress established safeguards providing that citizens of the United States who wished to bring alien orphans here must first file a petition with the Attorney General and obtain his approval before the child could be brought to the United States. Such law, which is controlling herein, expired June 30, 1961. Thereafter the Congress reenacted the statute in modified form by the Act of September 26, 1961, P.L. 87–301, 75 Stat. 650, 8 U.S.C.A. § 1101. The amended law abolished proxy adoptions. Changes were explained by H.Rep. 1086, 87th Cong., 1st Sess., p. 7:

"The changes are designed to eliminate abuses and hardships resulting from the adoptions of children never seen by the adoptive parents and heretofore coming to the United States without compliance with the applicable provisions of the adoption laws effective in the several States." U.S.Code Congressional and Administrative News, 1961, p. 2951.

2. The Attorney General delegated his authority to the Commissioner of Immigration and Naturalization. 8 C.F.R. § 2.1, November 26, 1958 (1961 Supp.).

ing that appellants were entitled to the relief sought. Both parties filed motions for summary judgment. Appellee's motion was based upon (1) the complaint and answer, and (2) the administrative file and record of the Immigration and Naturalization Service.

The administrative file disclosed that the appellants had entered into an adoption by proxy of Kim Yang Soon of the Republic of Korea; that they had previously adopted one Korean child who had been brought to this country under administrative procedures; that they had another child, not theirs by birth, over whom they had custody but for whom there had been no adoption proceedings nor explanation as to the custody of such child; that the adoption proceedings of Kim Yang Soon were in Korea in accordance with Korean law and without appellants being present; that the investigation of the instant petition of the appellants to adopt a second Korean orphan was made by the Commissioner of Immigration and Naturalization and his representatives under authority delegated by the Attorney General; that the reports of the investigation indicated that the appellants are both employed; that they had a history of non-cooperation with local agencies, refusing to allow local adopting agencies to make investigations and acquire data; that they each spent considerable time in their employment and in the rearing of the two children presently in their custody; that they had insufficiency of time to devote to the child who was the subject of the instant action; and that the administrative officers and agencies used in the investigation all made recommendations adverse to the entry of Kim Yang Soon into this country.

The District Court granted appellee's motion for summary judgment. This appeal followed.

Appellants contend here that they are attempting to exercise a right conferred by Act of Congress; that they have been denied due process and have not had their day in court; that due process calls for a "fair hearing" and a decision based upon competent evidence; that the ruling denying their petition was arbitrary and capricious in that it was based upon incompetent evidence, including hearsay, unsupported conclusions and speculations and irrelevant allegations. Appellants contend that it was error to grant summary judgment because issues of fact still remained unresolved and that this court should reverse "with instructions to hear evidence on the merits of appellants' complaint." [3]

We are concerned here primarily with the admission into this country of an alien orphan of the Republic of Korea who is not now and never has been in the United States or within its jurisdiction but who, in accordance with Korean law, was adopted by proxy by citizens of the United States and who has been denied entry through an administrative ruling under 8 U.S.C.A. § 1205.

The admission of aliens to this country, and all the rights, privileges and problems arising therefrom, has long been the subject of litigation in the federal courts and has had the attention of the Supreme Court on many occasions. In the early but still much-quoted case of Nishimura Ekiu v. United States, 1892, 142 U.S. 651, 12 S.Ct. 336, 35 L.Ed. 1146, the court held that the decision of an Inspector of Immigration, within the authority conferred upon him by the Act of March 3, 1891, c. 551, providing that an alien immigrant shall not be permitted to land because within one of the classes specified in that Act, is final and conclusive against his right to land except upon appeal to the Commissioner of Immigration and the Secretary of the Treasury, and could not be reviewed on habeas corpus, even if it were not shown that the Inspector took or recorded any evidence on the question. In so doing, the Supreme Court said at page 660 of 142 U.S., at page 338 of 12 S.Ct.:

3. At the oral argument in this court, appellants' counsel stated that they were abandoning their motion for summary judgment.

" * * * the final determination of those facts may be entrusted by Congress to executive officers; and in such a case, as in all others, in which a statute gives a discretionary power to an officer, to be exercised by him upon his own opinion of certain facts, he is made the sole and exclusive judge of the existence of those facts, and no other tribunal, unless expressly authorized by law to do so, is at liberty to reexamine or controvert the sufficiency of the evidence on which he acted. Martin v. Mott, 12 Wheat. 19, 31 [6 L.Ed. 537]; Philadelphia & Trenton Railroad v. Stimpson, 14 Pet. 448, 458 [10 L.Ed. 535]; Benson v. McMahon, 127 U.S. 457 [8 S.Ct. 1240, 32 L.Ed. 234]; In re[Luis] Oteiza[y Cortes], 136 U.S. 330 [10 S.Ct. 1031, 34 L.Ed. 464]. It is not within the province of the judiciary to order that foreigners who have never been naturalized, nor acquired any domicil or residence within the United States, nor even been admitted into the country pursuant to law, shall be permitted to enter, in opposition to the constitutional and lawful measures of the legislative and executive branches of the national government. *As to such persons, the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.* Murray v. Hoboken Co., 18 How. 272 [15 L.Ed. 372]; Hilton v. Merritt, 110 U.S. 97 [3 S.Ct. 548, 28 L.Ed. 83]." (Emphasis supplied.)

In Fong Yue Ting v. United States, 1893, 149 U.S. 698, 713, 13 S.Ct. 1016, 1022, 37 L.Ed. 905, the court held:

"The power to exclude or to expel aliens, being a power affecting international relations, is vested in the political departments of the government, and is to be regulated by treaty or by act of Congress, and to be executed by the executive authority according to the regulations so established, except so far as the judicial department has been authorized by treaty or by statute, or is required by the paramount law of the Constitution, to intervene.

"In Nishimura Ekiu's case, it was adjudged that, although Congress might, if it saw fit, authorize the courts to investigate and ascertain the facts upon which the alien's right to land was made by the statutes to depend, yet Congress might intrust the final determination of those facts to an executive officer, and that, if it did so, his order was due process of law, and no other tribunal, unless expressly authorized by law to do so, was at liberty to reexamine the evidence on which he acted, or to controvert its sufficiency. 142 U.S. 660 [12 S.Ct. 336]."

In Kaplan v. Tod, 1925, 267 U.S. 228, 45 S.Ct. 257, 69 L.Ed. 585, the court was dealing with a particularly appealing and pathetic situation, the admission into the United States of a feeble-minded child of naturalized citizens. There the child was first detained at Ellis Island and then committed to the custody of the Hebrew Society pending determination of her rights. In sustaining dismissal of a petition for a writ of habeas corpus based on claimed unlawful detention under a warrant of deportation issued by the Assistant Secretary of Labor, Mr. Justice Holmes, speaking for a unanimous court, said, at page 230 of 267 U.S., at page 257 of 45 S.Ct.:

" * * * Naturalization of parents affects minor children only 'if dwelling in the United States.' Rev. Stats. § 2172. * * * She was still in theory of law at the boundary line and had gained no foothold in the United States. Nishimura Ekiu v. United States, 142 U.S. 651, 661 [12 S.Ct. 336, 35 L.Ed. 1146]. She never has been dwelling in the United States within the meaning of the Act. Still more clearly she never has begun to reside permanently in

the United States within the later Act of March 2, 1907, c. 2534, § 5; 34 Stat. 1229."

■ In United States ex rel. Knauff v. Shaughnessy, 1950, 338 U.S. 537, 70 S.Ct. 309, 94 L.Ed. 317, the Supreme Court very clearly pointed out that admission of an alien to this country is not a right but a privilege which is granted only upon such terms as the United States prescribes. The court stated there, at page 543 of 338 U.S., at page 312 of 70 S.Ct.:

"* * * Whatever the rule may be concerning deportation of persons who have gained entry into the United States, it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien. Nishimura Ekiu v. United States, 142 U.S. 651, 659–660 [12 S.Ct. 336, 338, 35 L.Ed. 1146]; Fong Yue Ting v. United States, 149 U.S. 698, 713–714 [13 S.Ct. 1016, 1022, 37 L.Ed. 905]; Ludecke v. Watkins, 335 U.S. 160 [68 S.Ct. 1429, 92 L.Ed. 1881]. Cf. Yamataya v. Fisher, 189 U.S. 86, 101 [23 S.Ct. 611, 47 L.Ed. 721]."

In Shaughnessy v. United States ex rel. Mezei, 1953, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956, the court, speaking through Mr. Justice Clark, said at page 212 of 345 U.S., at page 629 of 73 S.Ct.:

"It is true that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law. The Japanese Immigrant Case, 189 U.S. 86, 100–101 (1903) [23 S.Ct. 611, 614, 47 L. Ed. 721]; Wong Yang Sung v. McGrath, 339 U.S. 33, 49–50 [70 S.Ct. 445, 94 L.Ed. 616] (1950); Kwong Hai Chew v. Colding, 344 U.S. 590, 598 (1953) [73 S.Ct. 472, 478, 97 L.

Ed. 576]. But an alien on the threshold of initial entry stands on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.' Knauff v. Shaughnessy, supra, [338 U.S.] at 544 [70 S.Ct. at 309, 313]; [Nishimura] Ekiu v. United States, 142 U. S. 651, 660 (1892) [12 S.Ct. 336, 338, 35 L.Ed. 1136]."

In Brownell v. Tom We Shung, 1956, 352 U.S. 180, 77 S.Ct. 252, 1 L.Ed.2d 225, a case strongly relied on by the appellants, the court held that after the passage of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101, et seq., the legality of an exclusion order entered under the relevant provisions of such Act could be challenged by an action for declaratory judgment under § 10 of the Administrative Procedure Act, 5 U.S. C.A. § 1009,[4] as well as by habeas corpus. The court here, however, said, at page 182, footnote 1, of 352 U.S., at page 254 of 77 S.Ct.:

"Since [Nishimura] Ekiu v. United States, 142 U.S. 651 (1892) [12 S. Ct. 336, 35 L.Ed. 1146], this Court has held that in exclusion cases involving initial entry 'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.' At p. 660 [of 142 U.S., at p. 336 of 12 S.Ct.]."

In a precautionary note, footnote 3 at page 184 of 352 U.S., at page 255 of 77 S.Ct. the court also said:

"We do not suggest, of course, that an alien who has never presented himself at the borders of this country may avail himself of the declaratory judgment action by bringing the action from abroad."

■ 73 Stat. 490, 491, 8 U.S.C. § 1205(b), under which the appellants are claiming the right to bring into the United States a Korean national for entry

---

4. A privilege since rescinded by the Act of September 26, 1961, P.L. 87–301, 75 Stat. 650, 8 U.S.C.A. § 1105a(b), where a final order of exclusion has been made pursuant to an inquiry as provided for by 8 U.S.C.A. § 1226.

as an "eligible orphan", provided specifically that the petition "shall establish to the satisfaction of the Attorney General that the petitioners will care for such eligible orphan properly if he is admitted to the United States * * *." The Act further said:

> " * * * After an investigation of the facts in each case, the Attorney General shall, if he determines the facts stated in the petition are true * * * approve the petition * * *."

This provides only for an "investigation of the facts". No hearing is required and obviously none is intended. No "right" has been established by or in behalf of the Korean orphan with whom we are here concerned. The Act established only a privilege, a privilege which could be exercised only with the approval of the Attorney General or his designate. The appellants here can assert no right or privilege greater than that afforded the alien orphan. After an "investigation of the facts", as provided for in the Act, the petition of the appellants to bring the Korean orphan into the United States on a non-quota basis was denied. Under authority of the cases heretofore cited, this was clearly within the right and power of the Attorney General and the officials to whom he delegated such authority. Under these circumstances the courts possess no right or power to question the propriety or reasonableness of the Attorney General's denial of the petition by a declaratory judgment or otherwise.

Appellants also claim that the District Court had jurisdiction by reason of § 10 of the Administrative Procedure Act of June 11, 1946, c. 324, 60 Stat. 243, 5 U.S.C.A. § 1009. In answering that contention, the District Court held:

> "The Administrative Procedure Act involved, 5 U.S.C., Sec. 1009, provides for judicial review of an agency action 'except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion.' The statutes here do not preclude judicial review but the Act, 8 U.S.C., Sec. 1205, does establish agency discretion.

> * * * * * *

> "The Act providing for the admission of eligible orphans, granting discretion to the Attorney General in the allowance or disallowance of petitions, and providing no remedy for review, and the Administrative Procedure Act providing for no review where the law places a discretion in an agency of the government, and the Declaratory Judgment Act granting jurisdiction only where a justiciable controversy exists, it is the Court's opinion that plaintiffs fail in their allegations to show any jurisdiction in this Court for the relief prayed for, and further, fail to show any abuse of administrative discretion. Therefore, defendant's Motion for Summary Judgment shall be sustained and plaintiffs' Motion for Summary Judgment overruled and denied and an Order will be entered to that effect."

▇ We think the District Court was entirely correct. Appellants' ability to care properly for such eligible orphan had to be established "to the satisfaction of the Attorney General" before the orphan could be admitted on a non-quota basis. This clearly was agency action committed to agency discretion; in other words, to the discretion of the Attorney General.

Appellee's motion for summary judgment was properly granted.

Affirmed.