**UNITED STATES of America ex rel. Grigorios STELLAS, Relator,**

v.

**P. A. ESPERDY, as District Director of the Immigration Service of the District of New York, or such person, if any, who have said Grigorios Stellas in custody, Respondent.**

United States District Court
S. D. New York.

Feb. 2, 1966. .

Pappas & Pappas, New York City, for relator; Chris Pappas, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, for respondent; Francis J. Lyons, Sp. Asst. U. S. Atty., of counsel.

**FREDERICK van PELT BRYAN, District Judge:**

Relator Stellas petitions for habeas corpus claiming that he is illegally detained by the Immigration and Naturalization Service for summary deportation.

Stellas, a native and subject of Greece, arrived in New York on June 23, 1961, as a member of the crew of the M/T Andreas. He was found to be in need of medical treatment and was paroled for that purpose under the provisions of 8 U.S.C. § 1182(d) (5),[1] and the applicable regulation.[2] Upon expiration of his parole period Stellas absconded and remained at large until July 11, 1963, when he surrendered himself to immigration officials in New York City.

In the interim, however, Stellas had married an American citizen, Nancy Arnold, in New York on January 15, 1962. A child was born of this marriage on June 12 of that year, and at the time of Stellas's surrender on July 11, 1963, his wife was expecting a second child.

In view of the family situation the Immigration and Naturalization Service re-paroled Stellas to afford him an opportunity to adjust his immigrant status. On July 25, 1963, Stellas's wife filed a visa petition with the District Director pursuant to 8 U.S.C. § 1155(b)[3] in order to accord her husband nonquota immigrant status under 8 U.S.C. § 1101(a) (27) (A).[4] The petition was approved on August 4, 1963, see 8 U.S.C. § 1155(c),

---

1. This section provides: "The Attorney General may in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."

2. 8 C.F.R. § 253.1(d) reads as follows: "*Medical treatment or observation.* Any alien crewman denied a conditional landing permit or whose conditional landing permit issued under § 252.1(d) (1) of this chapter is revoked may, upon the request of the master or agent, be paroled into the United States under the provisions of section 212(d) (5) of the Act in the custody of the agent of the vessel or aircraft and at the expense of the transportation line for medical treatment or observation."

3. This subsection reads in pertinent part: "Any citizen of the United States claiming that any immigrant is his spouse or child and that such immigrant is entitled to a nonquota immigrant status under section 1101(a) (27) (A) of this title * * * may file a petition with the Attorney General. The petition shall be in such form and shall contain such information and be supported by such documentary evidence as the Attorney General may by regulations prescribe * * *."

4. This provision defines a "nonquota immigrant" as "an immigrant who is the child or the spouse of a citizen of the United States."

and forwarded to the American Consulate at Caracas, Venezuela, where Stellas was to perfect his nonquota status.[5] However, for the following two years Stellas did nothing to pursue actively his application in Caracas. This procrastination was claimed to be due to financial difficulties. Under the circumstances the parole period was extended from time to time by the Immigration Service. The most recent extension was to expire on March 16, 1966.

However, on November 10, 1965, Mrs. Stellas filed a written statement with the Service withdrawing the visa petition she had previously filed on behalf of her husband. Thereupon on November 18 the Service notified Stellas that his parole had been revoked pursuant to 8 U.S.C. § 1182(d) (5). Stellas appeared voluntarily, and on November 19 he had been taken to the airport for deportation when this writ issued.

On December 6 Mrs. Stellas filed a new petition, apparently in response to pressure from her husband's friends. But on December 15 she withdrew this petition, as well, when she appeared at the office of the Service for further questioning.

Relator Stellas first contends that the summary revocation of his parole without a hearing denies due process, or at least constitutes an abuse of administrative discretion which would justify granting the writ.

■■ The power of Congress to determine the conditions under which aliens may enter and remain in the United States is beyond question. Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953); United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 70 S.Ct. 309, 94

L.Ed. 317 (1950). Section 212(d) (5) of the Act, 8 U.S.C. § 1182(d) (5), states unequivocally that parole "shall not be regarded as an admission of the alien" and that after his return to custody "his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Thus parole functions simply as a device to avoid the necessity of needless confinement. See Leng Máy Ma v. Barber, 357 U.S. 185, 190, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958); Licea-Gomez v. Pilliod, 193 F.Supp. 577 (N.D.Ill.1960). In legal fiction the parolee is treated as if he were "stopped at the boundary line." Kaplan v. Tod, 267 U.S. 228, 230, 45 S.Ct. 257, 69 L.Ed. 585 (1925); see Leng May Ma v. Barber, supra; Rogers v. Quan, 357 U.S. 193, 78 S.Ct. 1076, 2 L.Ed.2d 1252 (1958).

■ As a result an alien paroled under 8 U.S.C. § 1182(d) (5.) cannot claim the procedural protections—including a full hearing on revocation—which are generally afforded to those who have already gained admission to the country, whether legally or illegally.[6] This is not to say that summary revocation of parole will never amount to a deprivation of due process. See United States ex rel. Paktorovics v. Murff, 260 F.2d 610 (2 Cir. 1958); Hart & Wechsler, The Federal Courts and the Federal System 328–35 (1953); cf. Note, Deportation and Exclusion: A Continuing Dialogue Between Congress and Courts, 71 Yale L.J. 760, 788 n. 136 (1962). Indeed, the legal fiction strains credulity where, as here, one "stopped at the boundary line" has nevertheless managed to marry and to father two children in the United States.

■ However, the Second Circuit has squarely held that an alien on temporary parole is not entitled—either as a matter

---

5. Since he entered the United States as a member of a crew of a vessel, Stellas was ineligible to make an application for adjustment of status in the United States. 8 U.S.C. § 1255(d); 8 C.F.R. § 245.1.

6. Aliens already in the country may only be deported under the expulsion provisions of the Act, 8 U.S.C. §§ 1251–1260,

which prescribe fairly generous procedural safeguards. On the other hand, aliens seeking admission are subject to the exclusion provisions of the immigration law which under some circumstances—as in the case at bar—afford few procedural protections. See also 8 U.S.C. § 1225(c).

of statutory interpretation [7] or constitutional due process—to a hearing on the revocation of his parole precedent to deportation from the country. Wong Hing Fun v. Esperdy, 335 F.2d 656 (2 Cir. 1964), cert. den., Ng Sui Sang v. Esperdy, 379 U.S. 970, 85 S.Ct. 667, 13 L.Ed.2d 562 (1965); see Ahrens v. Rojas, 292 F.2d 406 (5 Cir. 1961) (same). And this conclusion was reaffirmed in United States ex rel. Lam Hai Cheung v. Esperdy, 345 F.2d 989 (2 Cir. 1965), where the court held that a medical parolee who had overstayed his temporary parole stood in no better position with respect to a hearing.

Under the present circumstances relator's contention that constitutional rights are infringed by a failure to afford an alien parolee a hearing on the question of the revocation of his parole is untenable. Stellas's parole was terminated because his wife withdrew the visa petition which was the only avenue available for adjusting his immigrant status. Since the purpose for the parole no longer existed, the revocation was in full conformity with statutory requirements, and under the case law no hearing was required. Compare Brownell v. Tom We Shung, 352 U.S. 180, 182 n. 1, 77 S.Ct. 252, 1 L.Ed.2d 225 (1956).

Relator Stellas next contends that the revocation of his visa petition effected by the mere withdrawal of his wife's application, constitutes a denial of due process. Under 8 U.S.C. § 1156 the Attorney General may revoke approval of a prior petition for "good and sufficient cause." [8] By regulation thereunder, however, revocation of a visa petition is automatically accomplished by withdrawal of a spouse's application. 8 C.F.R. § 206.1(b) (1).[9]

Such a result does not constitute a deprivation of due process. The right to file a petition under 8 U.S.C. § 1155 is a right afforded to a citizen spouse who wishes to keep the family together. Even after the petition of the spouse is initially approved, as occurred in this case, an alien does not attain the status of a nonquota immigrant until the petition is acted upon favorably by the appropriate consular office. See Amarante v. Rosenberg, 326 F.2d 58 (9 Cir. 1964). Thus in Scalzo v. Hurney, 225 F.Supp. 560 (E.D.Pa.1963), aff'd, 338 F.2d 339 (3 Cir. 1964), the court held that an alien parolee did not acquire a vested right to permanent nonquota immigrant status when the application of her husband was initially approved, but was later withdrawn due to marital discord. See Ferraiola v. Murff, 167 F.Supp. 611 (S.D. N.Y.1958). And in Pereira v. I. N. S., 342 F.2d 422 (1 Cir. 1965) (per curiam) the court, relying upon the authority of 8 C.F.R. § 206.1(b) (1), upheld the summary revocation of a visa petition on the

7. The statutory provision relating to parole, 8 U.S.C. § 1182(d) (5), is silent as to whether a hearing is required on revocation.

8. The entire provision reads as follows: "The Attorney General may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under sections 1154, 1155, or 1184(c) of this title. Such revocation shall be effective as of the date of approval of any such petition. In no case, however, shall such revocation have effect unless there is mailed to the petitioner's last known address a notice of the revocation and unless notice of the revocation is communicated through the Secretary of State to the beneficiary of the petition before such beneficiary commences his journey to the United States.

If notice of revocation is not so given, and the beneficiary applies for admission to the United States, his admissibility shall be determined in the manner provided for by sections 1225 and 1226 of this title."

9. The regulation provides: "The approval of a petition made under sections 204, 205, or 214(c) of the Act [8 U.S.C. §§ 1154, 1155, 1183(c)] and in accordance with Parts 204, 205 or 214 of this chapter is revoked as of the date of approval in any of the following circumstances:
\* \* \* \* \* \* \*
(b) *Section 205* [8 U.S.C. § 1155]. As to a petition approved under section 205 of the Act:
(1) Upon formal notice of withdrawal filed by the petitioner with the officer who approved the petition."

withdrawal of a citizen spouse's application.

Nevertheless, relator urges that he should not be deported, or at least his deportation should be deferred because it will irrevocably wreck his marriage and leave his two small children without proper care and adequate means of support.

 It is true that the procedures under the Act and the Regulations with respect to an alien on parole may enable an American wife to rid herself of the physical presence of an alien husband by withdrawing her petition for his admission as a nonquota immigrant, or, indeed, by refusing to file such a petition. This may be done though there has been no matrimonial fault on the husband's part, and without regard to any rights or remedies under State domestic relations laws. There may be unfortunate effects on the children of the marriage.

But the choice between effectuation of the national policy to be followed with respect to the admission of aliens and the matrimonial consequences which may arise in some circumstances by reason of such policies, lies with the Congress and not with the courts. Congress has strictly circumscribed the conditions under which aliens may be admitted to this country and has empowered the Attorney General to determine when parole of an alien shall be terminated. The Attorney General has exercised the power so conveyed by regulation which governs this case.

It is not for the courts to pass upon whether or not the choice made by Congress was a wise one, nor to imply that it was not. The court's function here is confined to determining whether the relator is being held in violation of law. In this proceeding the Service has followed the law as laid down by Congress; no rights of the relator have been violated and neither his detention nor deportation is in any respect contrary to law.[10]

The Service has been lenient in extending parole in view of the family circumstances, despite the fact that the situation in which the relator finds himself is a result of his own illegal acts in the first instance. The wife has withdrawn a petition for nonquota status not once but twice. The Service cannot be expected to do more.

In the event that circumstances have arisen since the argument of this motion which are likely to change the legal posture in which petitioner finds himself, the Service will no doubt take such circumstances under consideration upon appropriate application by the relator. See United States ex rel. Knauff v. McGrath, 181 F.2d 839 (2 Cir. 1950); 8 U.S.C. § 1103; 8 C.F.R. § 243.3.

The petition for a writ of habeas corpus is dismissed.

It is so ordered.

---

10. It may be noted, moreover, that though relator's situation is not without its sympathetic appeal from the matrimonial viewpoint, the question of who is responsible for the family discord which seems to exist is not free from doubt on the record before the Service.