Juanita M. WATKINS

v.

**DIRECTOR, ADMINISTRATION DEPARTMENT NAVAL PUBLICATIONS & FORMS CENTER et al.**

Civ. A. No. 73–2646.

United States District Court,
Nov. 27, 1974.
E. D. Pennsylvania.

Bruce E. Endy, Meranze, Katz, Spear & Wilderman, Philadelphia, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., Kenneth A. Ritchief, Asst. U. S. Atty., for defendants.

## OPINION

HIGGINBOTHAM, District Judge.

Mrs. Juanita M. Watkins, a supervisory employee with the Naval Publications and Forms Center in Philadelphia, Pennsylvania, was suspended from her job by her superiors for ten days without pay on charges that she had failed to safeguard certain classified material in her custody. This decision was appealed by Mrs. Watkins through the Department of the Navy's grievance procedures, and after running the procedural gauntlet of administrative review, the decision to suspend her was ultimately upheld by the Secretary of the Navy. Mrs. Watkins has now appealed the Secretary's decision to the District Court for review under the Administrative Procedure Act, 5 U.S.C. § 551 et seq. The record of the administrative proceedings has been filed, and both the plaintiff and the government defendants have filed motions for summary judgment. Government defendants have moved in the alternative for dismissal of the complaint for lack of subject matter jurisdiction. Although I find defendants' jurisdictional arguments unpersuasive, I do find that the Secretary's decision is supported by substantial evidence and is not arbitrary, capricious, or an abuse of discretion. Therefore, defendants' motion to dismiss and plaintiff's summary judgment motion are denied, and defendants' motion for summary judgment is granted.

## FACTUAL DISCUSSION

Plaintiff holds the position of Supervisory Teletypist, GS–6, with the Naval Publications and Forms Center, and among her responsibilities is overseeing the destruction of certain classified material. Plaintiff reported for work on January 2, 1973, and found approximately twenty classified cards which by regulations should have been destroyed on the previous shift; as supervisor of her shift, she undertook the task of destroying them.

The procedure for destroying these cards was rigidly defined. It was required that the destruction of the cards be witnessed and that both the supervisor and the witness sign a destruction report verifying the destruction of each individual card. The cards were identified numerically. Plaintiff was specifically instructed and trained in the procedure to be followed in the destruction of classified material.

Upon inspection of the destruction report for plaintiff's shift by the registered publication systems officer, it was discovered that there was no witnessing signature on the destruction report for the destruction of a card numbered seventeen. According to plaintiff's testimony the card was in fact destroyed during her shift and the absence of a witnessing signature on the destruction report was an oversight by a Mrs. Helen Johnson, teletype operator under plaintiff's supervision, who had been designated on that occasion to witness the destruction of the material. As a result of this incident Mrs. Johnson was given an oral reprimand, the second shift supervisors were given an oral reprimand for leaving key cards undestroyed, and plaintiff received a ten (10) day suspension. Seven months before the security infraction of January 2, 1973, plaintiff had received a letter of caution for the same infraction—failure to obtain a witness' signature on a destruction report after the destruction of classified material.

On March 27, 1973, M. B. Swayne, the Director of the Administrative Department of the Naval Publications and Forms Center, advised Mrs. Watkins by letter of her decision to suspend the plaintiff for ten (10) days without pay for the offense of "Failure to Safeguard Classified Matter, First Infraction". Her suspension was to begin April 3, 1973 and to run sporadically through April 24, 1973. In this letter, Mrs. Watkins was instructed that she might have a limited appeal to the Civil Service Commission or she could appeal the mer-

its of the decision through the Standard Navy Grievance Procedure.

On March 30, 1973, Mrs. Watkins filed her appeal or grievance through the Standard Navy Grievance Procedure. As a result of her grievance, Swayne decided to deny the plaintiff's grievance by Memorandum dated April 12, 1973. On April 14, 1973, Mrs. Watkins appealed her grievance to the Commanding Officer, Naval Publications. This appeal resulted in a hearing held June 4, 1973, by which time Mrs. Watkins had served her suspension. The Hearing Examiner's finding was that the ten day suspension was punitive and she recommended that the penalty be reduced to a written reprimand.

The Commanding Officer, Philip Crosby, refused to agree with the Hearing Examiner's recommendation and forwarded the appeal to the Secretary of the Navy for decision. The Secretary of the Navy also declined to accept the Hearing Examiner's recommendations, relying instead on the reasons given by the Commanding Officer, Philip Crosby, for sustaining the ten day suspension. This appeal followed.

## LEGAL DISCUSSION

*Jurisdictional Issue*

Defendants argue that the action must be dismissed under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Plaintiff has cited several alternative bases for this Court's jurisdiction in this matter, but I need address only one. Section 10(a) of The Administrative Procedure Act, 5 U.S.C. § 702, states:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

Also, Section 10(c) of the same Act, 5 U.S.C. § 704, reads in part:

"Agency action made reviewable by statute and final agency action for

which there is no other adequate remedy in a court are subject to judicial review."

In rendering an enlightening interpretation of these two statutory provisions, the United States Supreme Court reviewed in Abbott-Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L. Ed.2d 681 (1967), a decision of the Court of Appeals for the Third Circuit holding that judicial review of certain Food & Drug Administration regulations was not authorized by The Federal Food, Drug and Cosmetic Act and that, therefore, that case was beyond the jurisdiction of the District Court. Mr. Justice Harlan, writing for a majority of the Court, stated:

"The first question we consider is whether Congress by the Federal Food, Drug, and Cosmetic Act intended to forbid pre-enforcement review of this sort of regulation promulgated by the Commissioner. *The question is phrased in terms of 'prohibition' rather than 'authorization' because a survey of our cases shows that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress.* Board of Governors v. Agnew, 329 U.S. 441, 67 S.Ct. 411, 91 L. Ed. 408; Heikkila v. Barber, 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972; Brownell v. We Shung, 352 U.S. 180, 77 S.Ct. 252, 1 L.Ed.2d 225; Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503; Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210; Rusk v. Cort, 369 U.S. 367, 82 S.Ct. 787, 7 L.Ed.2d 809. Early cases in which this type of judicial review was entertained, e. g., Shields v. Utah Idaho Central R. Co., 305 U.S. 177, 59 S. Ct. 160, 83 L.Ed. 111; Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L. Ed. 733, have been reinforced by the enactment of the Administrative Procedure Act, which embodies the basic presumption of judicial review of one 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute,' 5 U.S. C. § 702, so long as no statute precludes such relief or the action is not one committed by law to agency discretion, 5 U.S.C. § 701(a). The Administrative Procedure Act provides specifically not only for review of '[a]gency action made reviewable by statute' but also for review of 'final agency action for which there is no other adequate remedy in a court,' 5 U.S.C. § 704. The legislative material elucidating that seminal act manifests a congressional intention that it cover a broad spectrum of administrative actions, and this Court has echoed that theme by noting that the Administrative Procedure Act's 'generous review provisions' must be given a 'hospitable' interpretation. Shaughnessy v. Pedreiro, 349 U.S. 48, 51, 75 S.Ct. 591, 594, 99 L.Ed. 868; see United States v. Interstate Commerce Comm'n, 337 U.S. 426, 433–435, 69 S.Ct. 1410, 1414–1415, 93 L.Ed. 1451; Brownell v. We Shung, *supra*, Heikkila v. Barber, *supra*. *Again in* Rusk v. Cort, *supra*, 369 U.S. at 379–380, 82 S.Ct. at 794, *the Court held that only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review.* See also, Jaffe, Judicial Control of Administrative Action 336–359 (1965)." 387 U.S. at 139, 140, 141, 87 S.Ct. at 1510, 1511. (Emphasis added.)

The defendants contend that under the decisions of Local 542, International Union of Operating Engineers v. N. L. R. B., 328 F.2d 850 (3d Cir. 1964), cert. denied, 379 U.S. 826, 85 S.Ct. 52, 13 L. Ed.2d 35 (1964), and Zimmerman v. United States, 422 F.2d 326 (3d Cir. 1970), the Administrative Procedure Act has been authoritatively construed as remedial and not jurisdictional in nature. Of course, this assertion, even if accepted as a valid one, does not preclude a finding that upon the facts pled in this case, jurisdiction resides in the district court to entertain the suit. Ab-

bott-Laboratories v. Gardner, *supra,* speaks of the Administrative Procedure Act as embodying a "basic presumption of judicial review" in the absence of clear and convincing evidence of a contrary legislative intent. Significantly, in the most recent decision of this Circuit cited by defendants, Zimmerman v. United States, *supra,* the Court of Appeals holds that the legislative history of 28 U.S.C. § 1498, a statute creating jurisdiction in the Court of Claims to entertain patent disputes between United States Government employees and the United States government, is not a general waiver of sovereign immunity outside the precise confines of the statute, and that the Administrative Procedure Act could not serve as a basis, independent of 28 U.S.C. § 1498, for jurisdiction in the District Court. The *Zimmerman* holding is clearly consistent with the *Abbott-Laboratories* rationale.

However, it is equally clear that Zimmerman v. United States, *supra,* is distinguishable from the present case. Here, defendants have not shown an independent basis for review of the Secretary's decision by any other tribunal, for if there does not reside in this Court jurisdiction to entertain the merits of Mrs. Watkins' civil complaint, she has no further remedy at equity or at law. Indeed, 5 U.S.C. § 704, as a condition of non-statutory review of final agency action, requires that there be " . . . no other adequate remedy in a court . . . " Further, defendants have not brought to my attention any federal legislative history or federal statute to evidence a legislative intent contrary to the exercise of judicial review under these circumstances, and, to the contrary, the Court of Appeals for this Circuit in Charlton v. United States, 412 F.2d 390,

395 (3d Cir. 1969) has stated that "enactment of the Administrative Procedure Act in 1946 . . . constituted 'special and direct legislation' which not only empowered but mandated federal courts to inquire into the *merits* of a civil service employee's dismissal." Defendants have not contended that the *Charlton* case is distinguishable on the ground that this is a "disciplinary" as opposed to a "dismissal" case and I would find such a distinction unpersuasive on the jurisdictional issue.[1]

I conclude, therefore, that this dispute is properly before the District Court and that I have jurisdiction to decide the merits of plaintiff's case.

*Review of the Federal Agency Action.*

■ Charlton v. United States, *supra,* while distinguishing those line of cases which have taken the more narrow view of the scope of judicial review in federal agency personnel action, held:

" . . . that the scope of judicial review of a federal agency's action with respect to the dismissal or discipline of a civil service employee extends to the determination whether procedural requirements have been satisfied in the administrative proceedings, and whether the administrative record establishes that substantial evidence supports the agency's action and that it was not arbitrary, capricious or an abuse of discretion." 412 F.2d at 395.

As I view Charlton v. United States, *supra,* applied to this controversy, the scope of my review is limited to the questions of whether the finding that plaintiff was guilty of neglect of duty as charged is supported by substantial evidence, and whether the decision to discipline her by means of a ten day suspen-

---

1. Although in Charlton v. United States, *supra,* a federal employee sought judicial review of his dismissal from the Internal Revenue Service, the decision of the Court of Appeals did not interpret the Administrative Procedure Act as limiting the phrase "agency action" to a dismissal as opposed to a

suspension of a federal employee. Indeed, the Court defined the scope of review of a federal agency's action under the Administrative Procedure Act " . . . with respect to the dismissal *or discipline* of a civil service employee . . .". 412 F.2d at 395. (Emphasis added.)

sion is arbitrary, capricious, or an abuse of discretion.[2]

Plaintiff contends that her suspension did not " . . . promote the efficiency of the service as required by the Civil Service Act, 5 U.S.C. § 7501(a);[3] that her penalty was arbitrary and capricious; and that her alleged neglect did not constitute a failure to safeguard classified matter as charged.

■ The government's memorandum of law, although dealing with the uncontested issue of judicial review with sufficient thoroughness, does not attempt to meet the specific substantive arguments made by the plaintiff on the merits of her case. An analysis of the administrative record has not been undertaken by counsel for the government, and, indeed, I do not find one citation to that record in the government's brief. When confronted with an administrative record of such substantial proportions even the most minimum standard of legal craftsmanship and advocacy require all parties to provide the Court with the benefit of their analysis of the facts of record as applied to the relevant legal precedents and to buttress their positions with the appropriate citations to the record and to the cases. Unfortunately, this has not been done on the government's behalf and I must therefore proceed without the analysis I surely should have been afforded had the government's brief been adequately prepared. However, rather than to delay this matter further by requiring the government to file an adequate brief, I have painstakingly read every page of the record.

Plaintiff admits that the procedural infraction regarding the destruction of classified matter occurred on the shift of which she was acting supervisor. She also admits to the agency's allegation that she did not insure that a witness sign the record of destruction.

Plaintiff argues, however, that her suspension by the agency was accompanied by certain procedural infirmities of its own which warrant the attention of the Court.

■ First, plaintiff asserts that no orders were produced at the hearing relating to her responsibility to insure the completeness of the destruction report. While I do not adopt the philosophy that a supervisor may escape responsibility for the work product of a subordinate because responsibility for checking for the specific work deficiency was not itemized in written work orders, the bald assertion that such orders were not produced at the hearing is a misrepresentation of the administrative record. Exhibit V from the administrative hearing is plaintiff's job description which defines her major duties and responsibilities to include " . . . supervising approximately six (6) to ten (10) subordinates GS-3 to GS-5 at least two days weekly . . . reviews, accepts, amends, rejects work of subordinates . . . Acts as shift supervisor in the absence of the GS-7 supervisor. Performs other duties as assigned." More specific than this description, which is clearly sufficient to put plaintiff on notice of her responsibility with respect to the administrative charge, is the letter of reprimand issued to plaintiff dated July 19, 1972. This letter of reprimand stated in part:

"1. This Letter of Reprimand is issued to you for a first infraction of failure to safeguard Classified Matter and is based on the following:

"a. On Saturday, 24 June 1972, in the process of destroying RPS Crypto mateeial you failed to comply with the strict regulations governing this procedure; in that *you did not insure that your witness sign the record of destruction, thus causing a security violation.* This negligence on your

---

2. See, Mendelson v. Macy, 123 U.S.App.D.C. 43, 356 F.2d 796, 800 (1966).

3. Section 7501(a) reads: "An individual in the competitive service may be removed or suspended without pay only for such cause as will promote the efficiency of the service."

part created a great concern and consideration as to whether a Crypto security violation was committed resulting in a compromise of Crypto material."[4] (Emphasis added.)

The letter of reprimand, which constitutes official disciplinary action, was withdrawn, and a letter of caution dated September 6, 1972, was issued by Commander Swayne, because, as the letter states, ". . . you indicated . . . that you realized the seriousness of the security violation that occurred in your office . . . . You assured me that you were quite concerned about the matter and you had taken steps to insure a repitition of such an incident would not occur in the future."[5] Plaintiff received an abundance of administrative notice of her supervisory responsibilities concerning this matter.

▋ Next plaintiff claims that there is a lack of semantic congruence between the infraction alleged and the offense charged of "Failure to Safeguard Classified Matter." This offense is listed in the "Standard Schedule of Disciplinary Offenses and Penalties for Civilian Employees in the Naval Establishment" (hereinafter "Standard Schedule"),[6] and carries penalties ranging from reprimand to removal.

Plaintiff raises this issue on the theory that the infraction which did take place should have been accompanied by a lesser penalty in view of the guidelines set forth in the Standard Schedule. The offense of "Failure or Delay in Carrying Out Orders, Work Assignments, or Instructions of Superiors" is suggested by plaintiff as the more appropriate charge, and this charge carries penalties ranging from reprimand to five days suspension.

The Federal Personnel Manual in its General Provision entitled "Choosing Among Disciplinary Actions" gives the following advice in the meting of penalties to discipline federal employees:

"c. Like penalties for like offenses. (1) In taking disciplinary actions, like penalties should be imposed for like offenses. Agencies should be as consistent as possible when deciding on disciplinary actions. Adherence to this principle will help to insure 'equitable and uniform treatment of employees against whom adverse action is proposed,' as contemplated by section 01.2(d) of Executive Order 9840.

"(2) Nevertheless, surface consistency should be avoided. Agencies should give consideration to all factors involved when deciding what penalty is appropriate, including not only the gravity of the offense but such other matters as the existence of mitigating circumstances, and frequency of the offense, and whether the action accords with justice in the particular situation. The grade and nature of the position the employee occupies will have a bearing in some situations; for example, misconduct which may warrant a reprimand to an employee in a lower grade may be intolerable if it involves an employee in a supervisory or fiduciary position.

"(3) Agency codes of penalties can be of considerable value in securing equitable treatment of employees, provided they are not so inflexible as to impair due consideration of the factors referred to in (2) above."[7]

The very first instruction on the use of the Standard Schedule states, "This list is not intended to cover every possible type of offense. Penalties not listed will be prescribed by the head of the activity consistent with penalties for offenses of comparable gravity."

In this instance the plaintiff was a supervisory employee who had, not once, but twice committed the same offense. She received a letter of reprimand on the first occasion which was reduced to a letter of caution, a less severe administrative action, on the promise that she

---

4. Exhibit IV A.

5. Exhibit IV A.

6. Exhibit VI.

7. Exhibit VII.

recognized the gravity of the infraction and would institute additional safeguards to insure that it would not occur again. The offense charged is clearly more specific than the offense plaintiff has suggested since it relates to the security of classified matter. The choice by the administrative agency of the more serious charge was not arbitrary, capricious, or an abuse of discretion and was completely warranted under the circumstances.

■ Plaintiff's counsel has devoted a considerable portion of his brief arguing that the classified material in question was in fact destroyed. While I find his argument persuasive on the destruction question, it is simply not relevant to my evaluation of the administrative charge in view of the evidence of record. The agency did not charge that the material was not destroyed. The specific allegation was that plaintiff neglected "to insure that a witness sign the record of destruction." Plaintiff urges, however, that I overturn the administrative finding, which is based entirely upon evidence undisputed by plaintiff, on the theory that "all's well that ends well"; that since there is substantial evidence to support the finding that the classified material was destroyed, I should reverse the administrative agency's decision suspending plaintiff and thus hold that where a civilian employee of a federal agency for the second time in seven months neglects to follow security procedures in the handling of classified matter, it is an abuse of discretion for that federal agency to discipline her unless the classified matter becomes stolen or missing as a result. Although I must

admit that counsel for plaintiff in his brief has taken the art of advocacy to new heights, I decline joining him in handcuffing administrative agencies in matters of personnel discipline to the point that they may not reasonably enforce compliance with essential internal operating procedures.

■ Finally, plaintiff contends that her suspension will not " . . . promote the efficiency of the service" as mandated by the Civil Service Act, 5 U.S.C. § 7501. To support this contention counsel cites three cases which clearly are not persuasive here. Chief Judge Bazelon in Norton v. Macy, 135 U.S. App.D.C. 214, 417 F.2d 1161 (1969), held that proof of homosexuality is not *per se* sufficient "cause" under 5 U.S.C. § 7512[8] to warrant employee dismissal by a federal agency. White v. Bloomberg, 345 F.Supp. 133 (D.Md.1972), involved a postal employee with twenty-seven years service who was discharged for failure to pay a single debt to a private creditor, and in Kennedy v. Sanchez, 349 F.Supp. 863 (N.D.Ill.1972), an Office of Economic Opportunity employee was discharged for making a speech critical of his superior which, of course, raised issues of constitutional dimension. The fact that plaintiff's suspension is within the permissible parameters of § 7501 is so patent that the question does not even warrant discussion.

■ I conclude, therefore, that the agency's action in disciplining the plaintiff is supported by substantial evidence and is neither arbitrary, capricious, nor an abuse of discretion. An appropriate order will be entered.

---

8. Section 7512(a) is a statute with comparable language to that of § 7501(a) except that it covers only "preference eligible employees" such as military veterans.