December 28, 1979

**79-91  MEMORANDUM OPINION FOR THE
GENERAL COUNSEL, CENTRAL
INTELLIGENCE AGENCY**

**Polygraph Tests—Central Intelligence Agency—
Industrial Polygraph Program—
Constitution—Supremacy Clause (Article VI,
Clause 2)**

A member of your staff has asked us for additional assistance with respect to the Central Intelligence Agency's (CIA's) Industrial Polygraph Program. Implementation of this program in Massachusetts has been delayed because of potential conflict with a Massachusetts statute penalizing an employer who requires employees to take polygraph tests. Mass. Gen. Laws, ch. 149, § 1913. In response to an earlier request, we presented our view, in a memorandum dated December 18, 1978, that a State law prohibiting the administration of polygraph tests to employees may not legitimately be applied to either the CIA or its contractors in a manner that precludes necessary security precautions. We reasoned that the Supremacy Clause would not allow a State law to disrupt Federal programs, even if the State law is applied only to a contractor and not to the Federal Government itself. We cautioned, however, that the validity of application of State law to Federal contractors is generally dependent on the facts and circumstances of a particular setting and that prelitigation predictions of success must be cautious.

By letter dated December 20, 1978, we expanded on these views. We repeated that the administration of polygraph tests to contractor employees who have access to, or are being considered for access to, sensitive compartmented information would meet the requirements of § 1-811 of Executive Order No. 12036, because, in the considered judgment of CIA officials, the tests are necessary to maintain appropriate standards of security. We did not suggest that administration of polygraph tests on a broader basis would be prohibited, but emphasized that the

limiting language of § 1–811 and the potential conflict with State law required that any such program not sweep more broadly than is deemed necessary by knowledgeable personnel in your agency.

We are now informed that the CIA wishes to proceed with the program in Massachusetts. At our request, your staff has provided further explanation of the CIA's need for the Industrial Polygraph Program. The explanation can be summarized as follows:

After the discovery of leaks of classified documents to foreign governments by a contractor's employee, the CIA Office of Security examined security standards governing access to sensitive compartmented information and determined that the standards were insufficient to protect such information. Although a contractor's personnel often have access to information not revealed even to CIA staff officers, the industry personnel are not subjected to the rigorous investigation required for staff positions. The Office of Security concluded that the personal history statement, background investigation, and personal interview were insufficient to identify at least three types of persons: (1) persons with vulnerabilities making them particularly susceptible to recruitment by hostile powers, (2) persons who have already been recruited by such powers but whose personal history statements are otherwise correct, and (3) persons who have developed false identities. Based on substantial experience with polygraphs, the Office of Security determined that the polygraph device would be an invaluable tool for improving security determinations. After successful completion of a pilot program, the Director of Central Intelligence ordered institution of the Industrial Polygraph Program.

The polygraph is not used as a substitute for less intrusive investigative measures. Instead, we have been informed that it is intended to enhance, upgrade, and extend those measures, and is, for these reasons, deemed a necessary adjunct. We have also been told that the examination is narrowed to the extent necessary to protect SCI information. To ensure that the tests will not be applied to employees indiscriminately, the CIA has identified the categories of persons who will be required to undergo a polygraph test.

As we set forth in our previous letters to you, courts reviewing State regulation of Federal contractors appear to apply the same standard as is applied to regulation of the Federal Government itself, that is, whether the State statute would defeat a legitimate Federal purpose or frustrate a Federal policy or function. *See, United States* v. *Georgia Public Service Comm'n,* 371 U.S. 285, 292–93 (1963); *Leslie Miller, Inc.* v. *Arkansas,* 352 U.S. 186, 190 (1956); *Railway Mail Assoc.* v. *Corsi,* 325 U.S. 88, 93–96 (1945). The determinative question is whether the State's regulation of the contractor conflicts with Federal legislation or with any legitimate discernible Federal policy. *See, Penn Dairies, Inc.* v. *Milk Control Control Comm'n,* 318 U.S. 257, 271 (1943).

Protection of sensitive intelligence information is required by statute and executive order, and clearly is a legitimate Federal function. *See* 50 U.S.C. §§ 403(d)(3), 403g; Executive Order No. 12065, 43 F.R. 28949 (1978). It appears to us that the CIA reasonably has determined that implementation of the Industrial Polygraph Program is necessary to protect adequately SCI information. If administration of the test to each included category of employees is reviewed carefully by CIA officials and determined necessary to protect sensitive information, it is our view that the State of Massachusetts may not interfere by enforcing its law against the Agency's contractors.

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*